## Case No. 3,076.

### In re COMSTOCK.

[1 N. Y. Leg. Obs. 326.]

District Court, S. D. New York. 1843.

#### NECESSARIES OF BANKRUPT.

[A pew in a church cannot be included in property set apart to the bankrupt as necessaries.]

In bankruptcy. This case came before the court on exceptions to the assignee's report, setting apart necessaries, &c., to the bankrupt [E. D. Comstock], because the assignee had refused to include in property set apart a pew in the Madison-Street Church.

A. Crist, for bankrupt.
W. C. H. Waddell, in person.

## Case No. 3,077.

### In re COMSTOCK et al.

[3 Sawy. 128;[1] 10 N. B. R. 451; 6 Chi. Leg. News, 413; 22 Pittsb. Leg. J. 25.]

District Court, D. Oregon. Sept. 3, 1874.

ACT OF CONGRESS NOT RETROSPECTIVE — ADJUDICATION IN BANKRUPTCY.

1. The provision of the act of June 22, 1874 (18 Stat. 181), amendatory of the bankrupt act [of 1867 (14 Stat. 536)], requiring one-fourth in number and one-third in amount of the creditors to join in a petition for an adjudication in bankruptcy, in cases commenced prior to its passage and since December 1, 1873, does not apply to any of such cases in which there had been an adjudication prior to the date of said act.

[Cited in Re Leland, Case No. 8,231.]

2. A petition in bankruptcy is an action or suit, and an adjudication of bankruptcy thereon is a final judgment, which judgment is be-

---

[1] [Reported by L. S. B. Sawyer, Esq. and here reprinted by permission.]

yond the power of congress to annul or set aside.

[Cited in Re Oregon Bulletin Printing & Pub. Co., Case No. 10,560.]

On December 16, 1873, a petition in bankruptcy was filed in this court against C. B. Comstock & Co., upon which they were adjudged bankrupts on January 9, 1874; which adjudication was affirmed in the circuit court on May 9, thereafter. On January 30, the Bank of British Columbia proved a debt against the estate, of $6,620.28, to which the assignee, on June 10, filed objections. On July 31 the bank moved to strike the objections from the files, because the court had no jurisdiction to proceed in the case since June 22, 1874, for the reason that it appeared that less than one-fourth in number and one-third in amount of the creditors had joined in the petition. Thereupon at the request of the parties, the register certified the question to the judge for decision, with an opinion against the motion.

William A. Effinger, for creditor.
William Strong, for assignee.

DEADY, District Judge. Section 39 of the bankrupt act [of 1867 (14 Stat. 536)], as amended by section 12 of the act of June 22, 1874 [supra], makes it necessary for at least one-fourth of the creditors in number and one-third in value to join in the petition to have their debtor adjudged a bankrupt; and provides that this provision "shall apply to all cases of compulsory or involuntary bankruptcy commenced since December 1, 1873."

The petition in this case was not brought by such a proportion of the creditors, either in number or value. The case having been "commenced since December 1," is within the mere letter of the act, but I do not think it is within the intent or purpose of it. This has been so held by Hopkins, D. J., in Re Raffauf [Case No. 11,525]; by Longyear, D. J., in Re Angell [Id. 386]; by Krekel, D. J., in Re Rosenthal [Id. 12,062]; by Withey, D. J., in Re Pickering [Id. 11,120]; and by Dillon, C. J., in Re Obear and Re Thomas [Id. 10,395].

A petition to have a debtor adjudged a bankrupt is to all intents and purposes an action or suit. The direct and immediate object of the proceeding is to obtain the judgment of the court that the debtor is a bankrupt. From the filing of the petition until the court pronounces upon this question, the action is pending. But so soon as judgment is given, either that the debtor is a bankrupt or not, it is no longer pending. The action has passed into judgment—not interlocutory, but final. True, there may follow long and complicated proceedings in the court concerning the settlement and distribution of the bankrupt's estate, but these are only consequences or incidents of such final judgment. Upon an execution to en-

force an ordinary judgment in an action at law to recover money or specific property, there may be proceedings against third persons for the purpose of subjecting money or property due from or held by such persons to the satisfaction of said judgment.

A decree dissolving the marriage relation is a final one, so far as the direct object of a suit for divorce is concerned, although the court may thereupon be authorized and proceed to make further decrees and orders, and change and modify the same from time to time, concerning the property of the parties and the custody and maintenance of their children.

A decree admitting a will to probate is a final one so far as the validity of the will is concerned, although the court, as a consequence of such decree, may proceed to administer and distribute the estate of the testator. Admitting that the legislature can modify or change the remedy in a particular case, even after the commencement of proceedings, such modification or change would only apply to pending cases. In the cases suggested there is no longer a remedy to be affected by the legislation. It is functus—merged or passed into judgment. The rights of all parties to the proceeding have thereby become determined and vested, beyond the reach of legislative caprice or control.

So in the case at bar. The petition to have Comstock & Co. adjudged bankrupts was no longer pending when the amendment of 1874 took effect. It had served its purpose and the adjudication upon it had determined the status of the debtors, and authorized the court to distribute their estate among their creditors. Even if it were within the power of congress to annul all the many adjudications in bankruptcy that were had throughout the country between December 1, 1873, and June 22, 1874, upon petitions filed since the former date, the act would be such an unreasonable, arbitrary, and unjust one that no court would hold that congress so intended unless the intention was expressed in the plainest and most explicit language. So long as the act was capable of any other construction it should be adopted in preference to one which would lead to such monstrous and extraordinary results. See In re Obear and In re Thomas, supra.

For these reasons I conclude that the act of 1874, requiring that in all cases of involuntary bankruptcy, commenced since December 1, a certain proportion of the creditors should join in the petition, was not intended to apply to the cases determined before its passage. As was said in Re Raffauf, supra: "Its requirements are satisfied with an application of its provisions to existing cases before adjudication, and such, it seems to me, is the obvious meaning of the amendment;" and, also, in Re Angell, supra: "The enactment in question is given full effect, and in my opinion all the effect congress intended it should have, by applying and limiting it

to cases still pending, and undisposed of by adjudication."

In Re Joliet I. & S. Co. [Case No. 7,436], and in Re Scammon [Id. 12,430], it was held that the act of 1874 applied to all cases commenced since December 1, and still pending or not adjudicated at the date of its passage; and, therefore, that the petitions in such cases must be amended so as to show that the requisite number and value of creditors join in it, before the court can give judgment. In the first case Blodgett, D. J., said: "It is manifest, then, that from the time this becomes a law no person can be adjudged a bankrupt unless the requisite number of creditors join in the petition, because it must be upon their petition: * * * Taking the whole scope of the act, it seems to me, that in all petitions where adjudication has not already been passed, the allegation must come from the petitioning creditors, and it must be made to appear affirmatively that the requisite number do join in the petition;" and in the second one: "The evident spirit and intent of the amendment is that all cases pending, commenced since December 1, shall conform to and proceed upon the requirements of the law in the same manner as new cases."

Now, although this precise question was not before the court in those cases, yet the plain import of the passages quoted is, that when the cases had passed into judgment they are not pending, and therefore not within the intention of the act. But if it were manifest that it was the intention of congress that the act should apply to all cases commenced since December 1, whether they had passed into judgment or not, it is equally plain that it is not within its power so to provide. The necessary effect of such an enactment in this case, would be to annul and set aside the judgment determining Comstock & Co. to be bankrupts, and to grant them a new trial. This would be the exercise of judicial power—a power which congress does not possess. By the constitution (article 3, § 1) it is provided: "The judicial power of the United States shall be vested in one supreme court, and in such inferior courts, as the congress may from time to time ordain and establish."

In Wheeling Bridge Case, 18 How. [59 U. S.] 431, Mr. Justice Nelson says: "But it is urged, that the act of congress cannot have the effect and operation to annul the judgment of the court already rendered, or the rights determined thereby in favor of the plaintiff. This, as a general proposition, is certainly not to be denied, especially as it respects adjudication upon the private rights of parties. When they have passed into judgment the right becomes absolute, and it is the duty of the court to enforce it." In the same case, at page 440, Mr. Justice McLean says: "The congress and the court constitute co-ordinate branches of the government; their duties are distinct and of a different character. The judicial power cannot legislate, nor can the legislative power act judicially;" and at page 449 Mr. Justice Greer says: "Congress cannot annul or vacate any decree of this court. The assumption of such a power is without precedent, and, as a precedent for the future, it is of dangerous example."

Counsel for the motion has attempted to show how this act may be applied to this case without annulling the judgment, by merely staying any further proceeding herein, as upon a stet processus, until the petition has been amended in conformity with it. But this implies that the amendment can be made, whereas the petitioner may not be able to get the requisite number of persons to join in the petition, and in that event the judgment is practically annulled, because no proceedings can be taken under it or in consequence of it. But if the amendment can be made, the debtors must be allowed to controvert it, or else it is a mere fiction, which may be alleged as a matter of form, to give the court jurisdiction. If the amendment is controverted, a trial must take place on this issue, which may result in a judgment dismissing the petition, and in that case what becomes of the former judgment? In effect it is annulled from the time it is considered within the purview of the act requiring the amendment of the petition.

That such is the effect of applying the act to this class of cases, it seems to me there can be no doubt. For instance, on December 2, 1873, the law of this state being, that a party might bring an action against an absent debtor and attach his property within the state to satisfy any judgment which he might obtain therein, upon the service of a summons by publication, suppose A. commenced an action in that manner against B., and obtained judgment before June 22, 1874, when the legislature changed the law and provided that service of a summons should not be made by publication except upon conditions and under circumstances materially different and in addition to those required by the old law, and further, that this provision should be retroactive and apply to all cases commenced since December 1, 1873, can it be claimed that this act could be applied to the case of A. v. B. without practically annulling and setting aside the judgment therein? Manifestly not. The only practical solution of the question, is to hold that the act of 1874 merely applies to pending cases—cases in which the action has not been brought to a termination—and that cases which have passed into judgment are not pending ones, but res adjudicata, and therefore beyond the domain of legislation.

[NOTE. The assignee objected to proof of debt by the bank, on the ground that the bank had never complied with the Oregon statutes requiring foreign corporations to appoint an attorney within the state before transacting business therein, and the bank moved to strike out the objection, and the court held the objection

well taken and denied the motion to strike out. Case No. 3,078.

[For a subsequent decision denying the right of the bank to appear by counsel at an examination before the register, see Case No. 3,080.]